JOHN C. GRISSOM v. W. M. PICKETT and J. J. PICKETT.

*Contract—Lien—Attachment.*

1. The liens provided for by §§ 1781 and 1782 of *The Code*, arise out of the simple relation of debtor and creditor for labor done or materials furnished, and where there is no other security than the personal obligations of the debtor.

2. *Therefore*, where the plaintiff, having abandoned a contract made with the defendant, to cultivate a crop upon shares, upon the ground that the defendant had failed to furnish the necessary stock, &c., as agreed, and attempted to assert a lien for the labor he had bestowed upon the crop; *held*, that the statute did not embrace his case.

(*Reynolds* v. *Pool*, 84 N. C., 37; and *Curtis* v. *Cash*, Ibid., 41, cited.)

Motion to vacate an attachment, heard before *Boykin,* *Judge,* at Spring Term, 1886, of ANSON Superior Court.

The plaintiff and the defendant W. M. Pickett, late in December, 1884, entered into an agreement, by the terms of which the said defendant was to furnish land for cultivation during the succeeding year, with three mules to be worked on it and fed, and the necessary farming implements, while the plaintiff was to supply all the labor and look after and manage all the farming operations until the crop was made and gathered, when after paying such expenses as were incurred and not provided for, there was to be an equal division of the crops between the parties. The plaintiff received from the defendant the number of mules agreed on, and entered upon and proceeded to cultivate the land until the 6th day of June, when he quit work and abandoned the premises for the alleged reason that the provender furnished the mules was insufficient in quantity and defective in quality, and in consequence of not being well fed, two of them broke down in May and June and became unfit for service, and the defendant, when applied to for others, without which it was impossible to carry on operations to the stipulated extent, refused to provide them. Thereupon the defendant took possession of the premises, and placed the other defendant, his son, in charge, who proceeded to make the crop.

In September, the plaintiff, claiming the right by reason of the essential failure of the defendant to fulfil his stipulations and enable him to go on with his work, to treat the agreement as annulled, filed in the clerk's office his claim for work and labor done in the crop by himself and family, and for money paid by him to hired employés, asserting a lien on the crop raised on the land, amounting in the aggregate to nearly eight hundred and fifty dollars. Subsequently the plaintiff sued out an attachment to enforce the lien, under which the sheriff seized a lot of corn and

cotton, and levied on the same lands. After notice, and upon defendant's motion, on November 24th, the clerk made an order vacating the attachment as to the land, and, as the plaintiff had an interest in the crops, as tenant in common, vacating also the attachment as to them on the defendants giving a sufficient bond to the plaintiff in the penal sum of $300 to secure to the plaintiff his share therein, upon the final adjudication in the cause.

From this ruling both parties appealed to the Judge, the defendants from so much thereof as required the giving the bond, and the plaintiff from the vacating order.

At April Term, 1886, the appeal came on to be heard, when the defendant's motion to vacate the order for attachment was allowed, and the plaintiff appealed to this Court.

*Mr. Platt D. Walker*, for the plaintiff.
*Mr. J. A. Lockhart*, for the defendants.

SMITH, C. J.. (after stating the case). While it may not be easy to distinguish the arrangement for the cultivation of the lands for the joint benefit of the contracting parties from that made in *Reynolds* v. *Pool*, 84 N. C., 37, and in *Curtis* v. *Cash*, Ibid., 41, where it was held that the relations of copartners had been formed, we do not deem it needful to put our ruling upon that ground.

The case is not in our opinion withing the letter or purpose of the enactment giving liens as contained in *The Code*, §§ 1781 and 1782.

The first creates the lien upon the property on which labor has been expended, or to which materials have been contributed, not generally, but "for the payment of all debts contracted for work done on the same, or material furnished."

The next section, without enlarging the scope of the other, gives efficacy to the lien or encumbrance which attached

GRISSOM *v.* PICKETT.

subsequent to the time when the work was begun, or the materials were furnished.

It is quite obvious that *debts* only are provided for, that is, claims for labor or materials supplied to be paid for as such, so that between the employé and the employer were formed the relations of debtor and creditor. Such were the claims intended to be secured, and not such as might grow out of an agreement, wherein, as in our case, compensation was to be sought in its fruits, which are contingent and uncertain.

Nor, in our opinion, can the joint arrangement, because of a violation of its terms by one party, and the election of the other to abandon it in consequence, be converted into a case of debtor and creditor, so as to bring the claim within the Act, whatever may be the result in the personal relations of the parties.

The plaintiff chose to look to the result of the year's farming operations, and to seek remuneration for his work in a share of the crops, and for any breach of the defendant's obligations may obtain redress commensurate with the injury suffered. But he is not at liberty, without regard to results, to fall back upon an implied contract, so as to give it the same operation under the statute as if it had been the original contract, when in fact it was not.

The enactment protects those who work or supply materials, and who, but for it, would have no security beyond that of the personal obligations of the employer.

The order for the attachment was therefore improvidently made, and we concur in the action of the Court in recalling it and dissolving the attachment.

No error. Affirmed.